Case No. 25-5169

———————————

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

———————————

MARK F. BERGENS,

*Plaintiff-Appellant,*

v.

DIVERSE CONCEPTS, LLC, ISLAND AMENITIES, LLC, and SMOKY
MOUNTAIN BLUE MOOSE, LLC,

*Defendants-Appellees.*

———————————

On Appeal from the United States District Court
for the Eastern District of Tennessee (Case No. 3:23-cv-00304)
The Honorable Clifton L. Corker

———————————

### APPELLANT'S REPLY BRIEF

———————————

Emma Freeman
APOLLO LAW LLC
1000 Dean Street
Suite 101
Brooklyn, NY 11238

Adam W. Hansen
 *Counsel of Record*
APOLLO LAW LLC
333 Washington Avenue North
Suite 300
Minneapolis, MN 55401
(612) 927-2969
adam@apollo-law.com

[*additional counsel listed on inside cover*]

David A. Burkhalter, II
D. Alexander Burkhalter, III
Zachary J. Burkhalter
BURKHALTER LAW FIRM, P.C.
111 South Central Street
Knoxville, TN 37901

*Counsel for Appellant*

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................... 1

STATEMENT OF THE CASE ................................................................ 2

I. FACTUAL BACKGROUND ............................................................. 2

    A. Diverse Soured on Bergens After He Returned to Work ....... 2

    B. Bergens Endures Ableist Comments ...................................... 6

    C. Diverse Mischaracterizes the Moonshine Incident ............... 6

    D. Diverse Mischaracterizes Bergens's Call with Delahunt and MacDonald ............................................................................. 8

ARGUMENT ......................................................................................... 9

I. A REASONABLE JURY COULD FIND THAT DIVERSE FIRED BERGENS BECAUSE OF HIS DISABILITY .................... 9

    A. Diverse Misapplies *McDonnell Douglas* and Ignores the Record as a Whole ................................................................. 9

    B. Bergens Can Prove That Disability Was a But-For Cause of His Termination ..................................................... 9

    C. Diverse's Contrary Arguments Lack Merit .......................... 11

CONCLUSION .................................................................................. 16

CERTIFICATE OF COMPLIANCE ...........................................................

ADDENDUM ...........................................................................................

CERTIFICATE OF SERVICE ....................................................................

# TABLE OF AUTHORITIES

## CASES

*Berry v. Crestwood Healthcare LP,*
    84 F.4th 1300 (11th Cir. 2023)........................................................2

*Blizzard v. Marion Tech. Coll.,*
    698 F.3d 275 (6th Cir. 2012) ........................................................4-5

*Bostock v. Clayton Cnty.,*
    590 U.S. 644 (2020) ...........................................................................6

*Kean v. Brinker Int'l, Inc.,*
    140 F.4th 759 (6th Cir. 2025)..........................................................7

*McDonnell Douglas Corp. v. Green,*
    411 U.S. 792 (1973) ...........................................................................7

*Reeves v. Sanderson Plumbing Prods., Inc.,*
    530 U.S. 133, 150 (2000) ...............................................................5-6

*U.S. Postal Servs. Bd. of Governors v. Aikens,*
    460 U.S. 711 (1983) ...........................................................................6

*Willard v. Huntington Ford, Inc.,*
    952 F.3d 795 (6th Cir. 2020) .........................................................12

## INTRODUCTION

Diverse's brief tries to reframe this case as a straightforward firing for misconduct, supposedly disconnected from disability. But that narrative doesn't withstand scrutiny. For months, Diverse celebrated Mark Bergens as an exemplary manager and slated him to lead a new flagship restaurant. After his stroke, that confidence evaporated. The same supervisors who, just weeks earlier, praised Bergens's leadership suddenly soured on him. They began questioning his abilities, tolerating ableist comments, and sidelining him from the very role they had groomed him for. When a trivial workplace prank provided a pretextual excuse, they seized it—deciding to fire him without investigation, without progressive discipline, and without hearing his side of the story.

The Americans with Disabilities Act exists to protect employees in this exact situation: workers who perform their jobs well but are derailed by the assumptions, fears, and stereotypes of their employers. The district court erred by atomizing the evidence—dismissing each piece of proof in isolation and repeatedly drawing inferences against the non-movant. Viewed as a whole and in the light most favorable to Bergens, the record easily supports a jury finding that disability bias was a but-for cause of his firing.

This Court should reverse and remand for trial.

1

## STATEMENT OF THE CASE

### I.    FACTUAL BACKGROUND.

Despite the standard of review, Diverse repeatedly asks this Court to view the facts in the light most favorable to it. The Court can't do that.

As Bergens explained in his principal brief, after he returned to work, on September 5, 2022, Bergens was subjected to numerous questions about his fitness, called ablist names, and sidelined from planning for the opening the Blue Moose Alcoa restaurant. Bergens Dep., R.32-6, PageID.1112, 1116-17, 1137. On this last point—planning for opening the new restaurant—Bergens testified that within a few weeks after his return to work, he "could tell that things were starting to change." Bergens Dep., R.28, PageID.196.

### A.    Diverse Soured on Bergens After He Returned to Work.

Diverse tries to push back, claiming that the company included Bergens in planning for opening the new restaurant right up until he was fired. But the very evidence Diverse cites supports Bergens, not Diverse.

First, Diverse points to text messages between Bergens and MacDonald, some of which discuss the Blue Moose Alcoa. Appellees Br. at 16, 46. But focus carefully on what these texts show. After late September 2022, only Bergens—not MacDonald—initiated any discussions about the Blue Moose Alcoa. And note MacDonald's responses: they grow increasingly terse and noncommittal, refusing to commit to basic requests like ordering work shirts or business cards for

2

Bergens. Diverse tellingly omits any discussion of the substance of these conversations, and it's not hard to see why: they support Bergens's account.

At first, MacDonald genuinely engages with Bergens about opening the Blue Moose Alcoa. On September 2, 2022—days before Bergens returned to work—MacDonald asked for Bergen's prediction about sales. Bergens Text Messages, R.28, PageID.244-45. On September 12, MacDonald texted a staffing document to Bergens. *Id.* at 247-49.

But then a shift occurred. Nearly all the remaining messages began with Bergens. And MacDonald's responses grew increasingly terse and cool—when he responded at all.

On September 15, Bergens texted about recruiting staff at a local school. *Id.* at 251. MacDonald barely marshalled a response. *Id.* On September 25, Bergens texted MacDonald about supplies. *Id.* at 253. MacDonald gave only a one-word response before changing the subject to college football. *Id.* Bergens texted the next day about restaurant decor. *Id.* at 254. MacDonald responded, "that's pretty sweet." *Id.* On September 28, MacDonald texted Bergens about an interview. *Id.* at 255-56. The same day, Bergens told MacDonald about Mandy Benton, the employee Bergens wanted to bring on as an assistant manager. *Id.* MacDonald responded saying "we are a semi go on that." *Id.* at 258.

As Bergens discussed in his principal brief, the next week is critical in the timeline. Diverse hired Jack Coppinger, the man who would go on

3

to take Bergens's job. MacDonald Dep., R.32-5, PageID.966. And Diverse abruptly reversed course on following Bergens's recommendation and transferring Benton to the Blue Moose Alcoa. Delahunt Email, R.32-5, PageID.1091.

Back to the text messages. At this point, MacDonald's responses to Bergens's texts become ice cold. And MacDonald never initiated any new messages with Bergens about the Blue Moose Alcoa.

On September 29, Bergens asked MacDonald how an interview went. Bergens Text Messages, R.28, PageID.258. MacDonald responded "really good" before changing the subject to Bergens's physical therapy. *Id.* The next day, Bergens asked whether construction had started; MacDonald responded "Monday." *Id.* at 260. On the 30th, Bergens asked about ordering business cards for his new role as general manager of the Blue Moose Alcoa. *Id.* at 260. MacDonald gave a one-word, almost comically noncommittal response: "Heard." *Id.* Later that day, Bergens texted that he'd sent MacDonald photos of the restaurant construction. *Id.* at 262. MacDonald ignored Bergens's message entirely. *Id.* A few days later, on October 2, Bergens texted MacDonald asking about ordering Blue Moose work shirts. *Id.* at 262. MacDonald responded cooly and noncommittally again, saying "We'll visit that." *Id.*

Bergens and MacDonald's last exchange about the Blue Moose Alcoa addressed the second piece of evidence Diverse cites in its defense: an October 18 marketing meeting about the new restaurant. Diverse

4

claims that Bergens's invitation to this meeting undercuts his case. But the details again betray Diverse's argument.

Now having gone more than two weeks without any substantive discussion about the new restaurant, Bergens texted MacDonald on October 17: "Hopefully we can get together when you get caught up." *Id.* at 267. Bergens then persistently sought a meeting with MacDonald, with MacDonald giving vague and noncommittal answers. *Id.* The next day, Bergens asked if MacDonald would be at the Blue Moose Alcoa construction site the following morning. *Id.* at 269. MacDonald said he'd be there for a "marketing meeting." *Id.* This news confirmed Bergens's worst fears, as this was the first he'd heard about the meeting. Bergens Dep., R.28, PageID.196; MacDonald Dep., R. 28, PageID.327. Bergens asked if he could attend and MacDonald responded "for sure." Bergens Text Messages, R.28, PageID.269. Without Bergens's prodding, there is no indication that MacDonald ever would have invited Bergens to the meeting. *Id.*

Diverse cites a third and final piece of evidence for the proposition that Bergens remained in good standing until his termination: a spreadsheet listing Bergens as the general manager for the Blue Moose Alcoa. Manpower Spreadsheet, R.28, PageID.419. There is no indication when this document was created. *Id.* The spreadsheet was emailed by Marty Armbrester, Diverse's Director of Human Resources, on October 13, 2022. Armbrester Email, R.28, PageID.418. Armbrester is not a

decisionmaker in this case. And Armbrester's email indicates that the document was created some time before he sent it. *Id.*

### B.    Bergens Endures Ableist Comments.

Diverse denies that "Delahunt told [Bergens] he was susceptible to another stroke, asked him questions about how he could train himself and others, and told him that his recovery was not proceeding as rapidly as expected." Appellee's Br. at 18. But this narrative ignores the standard of review. All Diverse cites in response is MacDonald and Delahunt's testimony. *Id.* This Court must credit Bergens's account that Delahunt said all of these things.

### C.    Diverse Mischaracterizes the Moonshine Incident.

Diverse tries to creatively spin the record to recharacterize the moonshine incident. Diverse concedes that the incident began as a joke but claims that after King told Bergens that he'd given away Bergens's moonshine, "[t]his is where the joke or prank ends." Appellee's Br. at 20.

The record does not support this characterization. As Bergens explained, King was "hiding" Bergens's jars of moonshine, hoping to send Bergens on a "wild goose chase" to hunt them down. King Dep., R.32-1, PageID.508; Bergens Dep., R.32-6, PageID.1127, 1183.

Diverse would have this Court draw several implausible inferences in its favor. Take one obvious example: Diverse asks this Court to believe that King just *happened to see* a video feed seconds after talking to Bergens that showed Bergens hunting for the moonshine. Bergens's

account makes far more sense: King, knowing full well that he'd sent Bergens on a game of hide and seek, proceeded directly—and intentionally—to the video monitor in the kitchen to watch Bergens look for the moonshine. Bergens Dep., R.32-6, PageID.1183; King Dep., R.32-1, PageID.496–97.

Diverse also ignores what followed the search. After watching Bergens look for the moonshine, King joined Bergens in the manager's office and laughed about the prank. Bergens Dep., R.32-6, PageID.1127-28. Diverse's framing of the facts to this Court also highlights the significance of Diverse's destruction of the original video evidence. As Bergens explained in his principal brief, the video before the Court is a "video of a video" captured by Perham. And her video cuts off before King joined Bergens in the office and laughed about his prank. All of this evidence refutes Diverse's litigation-inspired claim that the moonshine incident was a prank that morphed into a theft.

Diverse's account is undermined further by its unwillingness to even describe the video accurately.  It claims the video shows Bergens "rummaging through [King] and Biddle's personal bags" and "reaching in Biddle's bag." Appellee's Br. at 21. As the video clearly shows, Bergens never reached inside—let alone rummaged through—Biddle's bag. Bergens Dep. R.32-6, PageID.1163; Video at 0:16. Bergens only looked inside Biddle's bag, which was open. Video at 0:16. Nor did Bergens

rummage through King's bag. Bergens simply reached inside, felt a bottle of moonshine, then removed his hand. Video at 0:56–59.

### D.  Diverse Mischaracterizes Bergens's Call with Delahunt and MacDonald.

Diverse last claims that Bergens lied when confronted by Delahunt and MacDonald and that this supposed dishonesty contributed to their decision to terminate Bergens. Neither claim is true.

As Bergens explained, when he received the call from Delahunt and MacDonald, he initially had no idea what they were talking about. Standing on the side of the road and trying to hear over the highway noise, Bergens struggled to make sense of accusations that he "was stealing stuff." Bergens Dep., R.32-6, PageID.1174. Bergens—truthfully—denied that he stole anything. *Id.* Only after Delahunt described what he was talking about in detail did Bergens "eventually…realize[]" that Delahunt and MacDonald were asking about the moonshine prank. Bergens Dep., R.32-6, PageID.1174. Bergens proceeded to "explain[] what had happened," feeling "relieved" and confident that any misunderstanding "should be very easily cleared up." Bergens Dep., R.32-6, PageID.1174.

The record likewise doesn't support Diverse's claim that it fired Bergens for lying. Although Diverse tries to retreat from the point, both Delahunt and MacDonald testified that they'd made up their minds to fire Bergens before calling him. Delahunt Dep., R.32-3, PageID.636.

8

## ARGUMENT

**I.    A REASONABLE JURY COULD FIND THAT DIVERSE FIRED BERGENS BECAUSE OF HIS DISABILITY.**

The district court erred in granting summary judgment for Diverse. Diverse asks this Court to accept its position that the only reasonable view of the record evidence is that it fired Bergens solely for misconduct. The summary-judgment record shows otherwise. A reasonable jury could find that Diverse never would have fired him absent its concerns about his disability.

### A.    Diverse Misapplies *McDonnell Douglas* and Ignores the Record as a Whole.

Diverse's brief repeats the district court's central error: treating each fact in isolation, asking whether any single piece of evidence alone proves discrimination. But this Court must view "the record as a whole." *Hamilton v. Gen. Elec. Co.*, 556 F.3d 428, 437 (6th Cir. 2009) (cleaned up). The task is not to decide whether each strand of evidence independently proves bias, but whether all the strands, viewed together, could convince a reasonable jury that the employer's stated rationale was not the only reason for the firing.

Bergens can easily make that showing.

### B.    Bergens Can Prove That Disability Was a But-For Cause of His Termination.

Under the rubric of *McDonnell Douglas*'s pretext analysis, Diverse claims that there's insufficient evidence to conclude that concerns about

9

Bergens's disability was a but-for cause in his termination. But the evidence supporting pretext here is overwhelming:

Consider the evidence. There's a close temporal proximity between Bergens's stroke and his termination. Bergens faced repeated and skeptical questioning of his abilities and health. He was called names, including the "one-arm bandit." Bergens's general-manager training slowed and in some cases ceased. He was gradually excluded from discussions about opening the new restaurant. His superiors hired another manager to replace him. He was fired without any investigation or use of Diverse's own progressive-discipline policy. And he was treated far more harshly than non-disabled employees who committed far more serious infractions.

Each of these facts bears on the ultimate question of motive. Together, they paint an unmistakable portrait of discriminatory animus. The district court and Diverse commit the same analytical mistake: treating pretext as an "all-or-nothing" inquiry instead of asking whether the employer's justification was the only reason for its action. Under *Bostock v. Clayton County*, 590 U.S. 644 (2020), legitimate and illegitimate motives can coexist; the statute is violated whenever the protected trait was *one* but-for cause of the decision. Bergens needed only to "cast doubt on the employer's proffered reason as the sole reason for its action." *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1308 (11th Cir. 2023). He did that many times over.

10

### C.    Diverse's Contrary Arguments Lack Merit.

Diverse first claims that Bergens can't show that Diverse's termination decision lacked any basis in fact because the moonshine incident actually occurred. Appellee's Br. at 35-38.

But this attacks a strawman. No one disputes that the moonshine incident occurred. What Bergens disputes—and what the record shows— is that Diverse's response to the incident was contrived.

As a starting point, though, at least some elements of Diverse's characterization of the moonshine incident have no basis in fact. The surveillance footage shows Bergens briefly touching and peering into Biddle's already open bag, but not "digging" or "rummaging through" it— contrary to Diverse's exaggerated characterization. Video at 0:14–16; Perham Dep., R.32-4, PageID.834; MacDonald Dep., R.28, PageID.333.

But there's even less of a factual basis supporting Diverse's claimed reaction. A jury could accept that Diverse's decisionmakers, like King, knew that the incident was a joke and never genuinely felt that Bergens breached their trust. Bergens Dep., R.32-6, PageID.1174.

Diverse next tries to parry the "[s]uspicious timing" of Bergens's firing—"a strong indicator of pretext when accompanied by some other, independent evidence." *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012). But Diverse has little to say other than the moonshine incident also occurred on the same timeline. But this argument is circular. The fact that Diverse seized on a pretext near in

11

time to the point where it developed concerns about Bergens's abilities supports rather than undermines causation.

Diverse next tackles Bergens's affirmative evidence of bias, but it doesn't succeed in undermining Bergens's case. Diverse points out that the ADA does not categorically forbid asking about an employee's condition. That's true but beside the point. Comments about an employees' abilities can also be the hallmarks of bias. And that's especially true here. MacDonald and Delahunt asked Bergens "the same types of questions" again and again, until Bergens "realize[d] this [wa]sn't concern for [his] health." Bergens Dep., R.32-6, PageID.1133. "This [wa]s [a] concern that they didn't think [he] could do the job." Bergens Dep., R.32-6, PageID.1133. "[C]omments that demonstrate a discriminatory animus in the decisional process, or comments made by individuals closely involved in employment decisions may all constitute direct evidence of discrimination." *See King v. United States*, 553 F.3d 1156, 1161 (8th Cir. 2009). That's true here.

Diverse then tries to discount the incessant name calling, but it fails three times over. First it claims that Bergens wasn't offended by these comments, citing to a hostile-work-environment case. That point gets the facts wrong. Bergens found the names "hurtful" and "[in]appropriate." Bergens Dep., R.32-6, PageID.1120. And Diverse's citation to *Harris* is a red herring. Bergens is not making as hostile-work-environment claim; he is asserting that the name calling is evidence of

12

bias in his disparate-treatment case. As this Court has said, these sorts of "discriminatory remarks…can serve as probative evidence of pretext." *Kean v. Brinker Int'l, Inc.*, 140 F.4th 759, 776 (6th Cir. 2025). Diverse last points out the comments were made by non-decisionmakers. But both decisionmakers heard the comments in the work environment. Perham, Bergens's direct supervisor, used them. Bergens Dep., R.32-6, PageID.1116–17. And comments by non-decisionmakers are still probative of intent. *Kean*, 140 F.4th at 776. That's doubly true, where, as here, the decisionmakers worked in close proximity to the people making the comments.

Diverse next spills ink making the claim that it had no second thoughts about Bergens's promotion before the moonshine incident. Appellee's Br. at 45-48.

The response to these points is largely covered in the facts above. Supra at 2-6. Diverse claims that text messages between Bergens and MacDonald show that Bergens remained in Diverse's good graces right up until he was fired. But the messages show the opposite. MacDonald largely stopped initiating contact with Bergens about the Blue Moose Alcoa in mid-October 2022. *Id.* He refused to order business cards or Blue Moose work shirts for Bergens. *Id.* He ignored some of Bergens's messages altogether. *Id.*

The same response applies to Diverse's point about the October 18 marketing meeting. The record shows unequivocally that no one invited

13

Bergens to this meeting until Bergens learned about it by chance the day before. *Id.* Far from showing Bergens's inclusion, the October 18 meeting shows the degree to which Diverse tried to exclude Bergens from key meetings, permitting him to attend only reluctantly. *Id.*

Diverse's last piece of evidence—the corporate document showing Bergens listed as the general manager—doesn't help Diverse either. There's no indication of when the document was made. A jury could easily conclude that this document represented only a lagging indicator of Bergens's status. Nor would a jury be compelled to accept the document as accurate. Removing Bergens's name would show precisely the sort of discrimination that employers try to keep hidden. Last, the jury could conclude that Diverse's decisionmakers hadn't yet finalized any plan to undermine Bergens's promotion at the time the document was created. What matters is that a jury could infer that but for his disability, Bergens's employer would not have fired him over the moonshine incident. It could.

Diverse tops off its haphazard opposition brief with three scant paragraphs about the honest-belief defense, which it claims is enough to ward off Bergens's discrimination claim. Diverse is wrong.

At the outset, this defense doesn't apply to the vast majority of Bergens's pretext argument. Employers "cannot always rely on the honest-belief rule—it applies only when a plaintiff argues that the employer's reason for taking an adverse action has no basis in fact."

14

*Carroll v. IDEMIA Identity & Sec. USA, LLC*, No. 23-6075, 2025 WL 1027867, at \*5 (6th Cir. Apr. 7, 2025) (citation modified). The honest belief rule "does not apply when a plaintiff tries to show pretext in a different way." *Carroll*, 2025 WL 1027867, at \*5.

Diverse's honest-belief argument fails on the merits in any event. This Court requires an employer to "establish its *reasonable reliance* on the *particularized facts* that were before it at the time the decision was made." *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 708 (6th Cir. 2006) (emphases added). Diverse's false tale of mistrust and misconduct flunks this test for two reasons. First, Delahunt and MacDonald didn't fire Bergens in "reasonable reliance" on anything because they didn't conduct a reasonable investigation. They didn't speak with King or Biddle. Delahunt Dep., R.32-3, PageID.638. They didn't even watch the original, full security video of the incident, instead viewing only a limited, second-hand recording. Perham Dep., R. 32-4, PageID.770-71. Instead, Delahunt and MacDonald rushed to terminate Bergens after only a brief phone call, during which Bergens was pulled over on the side of the road. Bergens Dep., R. 32-6, PageID.1173-74.

Second, no "particularized facts" supported the conclusions that Delahunt and MacDonald purportedly made. For example, King's narrative—the sole evidence of Bergens's motive that Delahunt and McDonald credited—was contested, dubious, and reported only second-hand through Perham. That narrative provided no "particularized facts"

15

at all, much less legitimate ones that could reasonably have formed the basis for termination. And when Bergens attempted to provide sorely-needed context, Delahunt and MacDonald refused to hear him out, Bergens Dep., R.28, PageID.213—a failure to consider exculpatory evidence that cuts against applying the honest-belief rule. *Wright v. Univ. of Cincinnati*, 58 F. Supp. 3d 854, 861 (S.D. Ohio 2014).

In short, because Diverse "failed to make a reasonably informed and considered decision before taking its adverse employment action,…any reliance placed…in such a process cannot be said to be honestly held." *Wright v. Murray*, 455 F.3d at 708.

## <u>CONCLUSION</u>

Because a jury could conclude that Diverse fired Bergens because of his disability, this Court should reverse the district court's grant of summary judgment.

Date: November 4, 2025                Respectfully submitted,


<u>s/ Adam W. Hansen</u>
Adam W. Hansen
APOLLO LAW LLC
333 Washington Avenue North
Suite 300
Minneapolis, MN 55401
(612) 927-2969
adam@apollo-law.com

16

Emma Freeman
APOLLO LAW LLC
1000 Dean Street
Suite 101
Brooklyn, NY 11238

David A. Burkhalter, II
D. Alexander Burkhalter, III
Zachary J. Burkhalter
BURKHALTER LAW FIRM, P.C.
111 South Central Street
Knoxville, TN 37901

*Counsel for Appellant*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify pursuant to Fed. R. App. P. 32(g)(1) that the Appellant's brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 3,496 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). In addition, this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016, Century Schoolbook font in 14 point size, with footnotes in Century Schoolbook font in 14 point size.

<u>s/ Adam W. Hansen</u>
Adam W. Hansen

18

## CERTIFICATE OF SERVICE

I hereby certify that, on this 4th day of November, 2025, I caused the foregoing brief to be filed electronically with the Court, where they are available for viewing and downloading from the Court's ECF system, and that such electronic filing automatically generates a notice of electronic filing constituting service. I certify that all parties required to be served have been served.

<div style="margin-left: 40%;">
<u>s/ Adam W. Hansen</u><br>
Adam W. Hansen
</div>